| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only |
|---|---|---|

**CASE NO.:** ED CV 17-00074 SJO (SPx)       **DATE:** March 3, 2017

**TITLE:** Arthur Graham, et al. v. IFCO Systems N.A., Inc., et al.

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                Not Present
Courtroom Clerk                                 Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**             **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                     Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** [Docket No. 15.]

Plaintiffs Arthur Graham, Arvis Graham, and Marshall Fairley (collectively "Plaintiffs") filed a Motion to Remand ("Motion") on February 6, 2017. Defendant CHEP Recycled Pallet Solutions ("CHEP" or "Defendant") opposed the Motion ("Opposition") on February 13, 2017.[1] Plaintiffs filed their Reply on February 20, 2017. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for March 6, 2017. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Plaintiffs' Motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

   A.   Factual Background

Plaintiffs bring a class action suit against Defendant, alleging violations of (1) California Labor Code ("CLC") sections 510 and 1198 (unpaid overtime); (2) CLC sections 226.7 and 512(a) (unpaid meal period premiums); (3) CLC section 226.7 (unpaid rest period premiums); (4) CLC sections 1194, 1197 and 1197.1 (unpaid minimum wages); (5) CLC sections 201 and 202 (final wages not timely paid); (6) CLC section 204 (wages not timely paid during employment); (7) CLC section 226(a) (non-compliant wage statements); (8) CLC section 1174(d) (failure to keep requisite payroll records);(9) CLC sections 2800 and 2802 (unreimbursed business expenses); and (10) California Business and Professions Code ("CBPC") sections 17200, et seq. (*See* Notice of Removal ("Removal") Ex. A, Compl., ECF 1-1.)

Plaintiffs define the class as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendant within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Compl. ¶ 15.) Plaintiffs were

---

   [1]   Defendant was erroneously sued as IFCO Systems N.A., Inc. and CIOX Health.

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
|---|---|---|---|

CASE NO.:  ED CV 17-00074 SJO (SPx)          DATE: March 3, 2017

employed by Defendant as hourly, non-exempt employees from March or April 2013 until January or February 2014. (Compl. ¶¶ 20-22.)

Plaintiffs allege that Defendant "engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees within the State of California." (Compl. ¶ 29.) Plaintiffs contend that, with respect to Plaintiffs and all other class members, Defendant failed to pay overtime wages for all hours worked, failed to provide the requisite uninterrupted meal and rest periods, failed to pay at least minimum wages for all hours worked, failed to pay all wages owed to them upon discharge or resignation, and failed to pay all wages within any time permissible under California law. (Compl. ¶¶ 41-45.) Plaintiffs further contend that, with respect to Plaintiffs and class members, Defendant failed to provide complete or accurate wage statements, failed to keep complete or accurate payroll records, failed to reimburse them for business-related expenses and costs, and failed to compensate properly pursuant to California law "in order to increase Defendant's profits." (Compl. ¶¶ 45-49.)

Plaintiffs aver that the amount of damages for each named Plaintiff is less than $75,000, including "claims for compensatory damages, restitution, penalties, wages, premium pay, and pro rata share of attorneys' fees." (Compl. ¶ 1.)

      B.    Procedural Background

Plaintiffs filed a Class Action Complaint for Damages in the Superior Court of California, San Bernardino County ("SBSC") on November 30, 2016.[2] (*See generally* Compl.) On January 17, 2017, Defendant filed an answer to Plaintiffs' Complaint ("Answer") in the SBSC and filed the Removal in federal court. (*See* Removal, ECF No. 1; Removal Ex. B, Answer, ECF No. 1-2.) On January 25, 2017, Defendant filed an amended notice of removal ("Amended Removal"). (Am. Removal, ECF No. 13.) In the Amended Removal, Defendant alleges that removal is proper because the class size exceeds 100, the parties are diverse, and the amount in controversy exceeds $5,000,000. (*See generally* Am. Removal.) Specifically, Defendant contends that the amount in controversy is $5,141,839.00, not including attorney's fees. (Am. Removal ¶ 26.)

II.    DISCUSSION

Plaintiffs allege that Defendant has failed to establish the diversity of the parties and the amount in controversy by a preponderance of the evidence. (Mot. 2.) Defendant argues that Plaintiffs have not challenged its calculation of the amount of controversy, and, as such, does not need to

---

[2] On January 31, 2017, the parties stipulated to extending Plaintiffs' deadline to file motion for class certification to a date set by the Court after the Initial Scheduling Conference. (*See* Stipulation, ECF No. 14.)

JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: <u>ED CV 17-00074 SJO (SPx)</u>     DATE: <u>March 3, 2017</u>

enter any evidence to support its calculation of the amount in controversy. (Opp'n 1.) Defendant further alleges that, because Plaintiffs have not submitted evidence regarding the amount in controversy, it has met its burden for establishing proper removal. (Opp'n 1.) For the following reasons, the Court **GRANTS** Plaintiffs' Motion.

    A.    <u>Legal Standard</u>

Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants, where the amount in controversy exceeds $75,000. 28 U.S.C. §1332. In cases removed from state court, the removing party always bears the burden of establishing federal jurisdiction, including any applicable amount-in-controversy requirement. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a)) ("[A] defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal ' containing a short and plain statement of the grounds for removal.'"). Pursuant to section 1332(d) of the Class Action Fairness Act of 2005 ("CAFA"), federal courts have jurisdiction over class actions if: (1) the class has more than 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy exceeds $5 million. *Dart Cherokee*, 135 S.Ct. at 551; *see also* 28 U.S.C. §§ 1332(d)(2), (d)(5). There is no presumption against removal in cases invoking CAFA. *Dart Cherokee*, 135 S.Ct. at 554.

    B.    <u>Diversity</u>

The Court first analyzes whether the parties are diverse. Both parties aver that Plaintiffs are citizens of the state of California. (*See* Compl. ¶¶ 5-7; Am. Removal ¶ 11.) Plaintiffs allege that Defendant did not establish diversity because, in its Removal, Defendant alleged the citizenship of CHEP Recycled Pallet Solutions, LLC and not IFCO Systems, N.A., Inc., the party sued. (Mot. 4.) The party seeking removal bears the burden of showing diversity. *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1203 (E.D. Cal. 2008) ("Where a party seeks to invoke federal jurisdiction on the basis of diversity of citizenship, the law places the burden of persuasion on the party seeking to invoke the court's jurisdiction.")

In its Amended Removal, Defendant alleges that it has a sole member, CHEP USA, who is an "unincorporated association organized under the laws of the State of New York with its principal place of business in Georgia." (Am. Removal ¶ 12.) However, an LLC's citizenship is not determined by its principal place of business or its state of incorporation. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens."). Thus, the citizenship of CHEP USA depends on the citizenship of its members/owners. Defendant further alleges that CHEP USA has two general partners, Brambles North American Incorporated ("Brambles") and IFCO Systems North America, LLC ("IFCO"), both of which are incorporated in Delaware with a principal place

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 4 of 15 Page ID #:333

JS-6
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CIVIL MINUTES - GENERAL

CASE NO.: ED CV 17-00074 SJO (SPx)          DATE: March 3, 2017

of business in Georgia. (Am. Removal ¶ 12.) Defendants also aver that IFCO Systems North America, LLC's sole owner is a foreign corporation "and, thus is not a citizen of California." (Am. Removal ¶ 12.) Accordingly, Brambles is a citizen of Delaware and Georgia and IFCO's citizenship is the same as its owner. *See Korn*, 536 F. Supp. 2d at 1203 ("[A] corporation is a citizen in the state of its incorporation, as well as in the state of its principal place of business."). Thus, Defendant is not a citizen of California.

Plaintiffs further allege that Defendant did not offer any evidence to substantiate its claims concerning the identity and citizenship of the Defendant. (Am. Removal ¶ 12.) Although challenging Defendant's citizenship, Plaintiff offers no evidence disputing Defendant's allegations in either the Complaint or the Motion. (*See generally* Mot.; Compl.) Defendant does not address Plaintiffs' diversity concerns in its Opposition. (*See generally* Opp'n.) Here, Defendant unequivocally states the owners, partners, places of incorporation and principal business of the involved parties in the Amended Removal. *Cf. Bradford v. Mitchell Bros. Truck Lines*, 217 F.Supp. 525, 527 (N.D. Cal. 1963) (finding removal improper where defendant alleges citizenship based upon information and belief and not upon facts). Accordingly, the Court finds that Defendant has met its burden regarding diversity of citizenship.

      C.      Amount in Controversy

The Court next analyzes whether the amount in controversy is met. Plaintiffs challenge several assumptions made by Defendant when calculating the amount in controversy. (*See generally* Mot.) Plaintiffs further argue that Defendant failed to establish the amount in controversy by a preponderance of the evidence because it did not provide the requisite evidence to support its assumptions or its calculation. (*See generally* Mot.) Defendant argues that it was not required to submit evidence with its Removal, that it is still not required to submit evidence because Plaintiff has not submitted evidence refuting Defendant's amount-in-controversy calculation, and that it made the calculation in good faith. (Opp'n 2-6.)

      1.      The Evidentiary Standard Does Not Require Plaintiffs to Submit Evidence Supporting Their Contention That Remand is Proper

The Court begins its analysis of the amount in controversy with the governing standard of law. Defendant argues that the Plaintiffs have not challenged its allegation that the amount in controversy meets the CAFA requirement, and, instead, have merely "challenged Defendant's evidentiary support of these allegations." (Opp'n 1, 3.) The Court is unpersuaded by this argument. Defendant correctly asserts that, when unchallenged, an amount in controversy alleged in the notice of removal should be accepted. *See Dart Cherokee*, 135 S.Ct. at 553; *see also Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (quoting *Dart Cherokee*, 135 S.Ct. at 554) ("'[A] defendant's notice of removal need include only a plausible allegation that

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 5 of 15 Page ID #:334

JS-6                    UNITED STATES DISTRICT COURT          Priority
                        CENTRAL DISTRICT OF CALIFORNIA        Send
                                                              Enter
                           CIVIL MINUTES - GENERAL            Closed
                                                              JS-5/JS-6
                                                              Scan Only

CASE NO.: ED CV 17-00074 SJO (SPx)           DATE: March 3, 2017

the amount in controversy exceeds the jurisdictional threshold' and need not contain evidentiary submissions."). However, the Plaintiffs do in fact challenge the amount itself, and not just the lack of evidence supporting the amount, throughout their Motion. (*See generally* Mot.) Furthermore, a motion to remand is an *ipso facto* challenge to the grounds for removal, triggering the preponderance standard. *See Dobbs v. Wood Group PSN, Inc.*, CV No. 16-00838 LFO (JLTx) , 2016 WL 4367218 at * 2 (E.D. Cal. Aug. 16, 2016) (citations omitted) ("On a plaintiff's motion to remand, it is defendant's burden to establish jurisdiction by a preponderance of the evidence."). Accordingly, the Court finds that Plaintiffs have adequately challenged the amount in controversy such that it must be proved by a preponderance of the evidence.

Defendant also argues that, when the amount in controversy is challenged, both parties must submit evidence regarding the amount in controversy, and that, because Plaintiffs failed to submit such evidence, Defendant's burden is already met. (Opp'n 1.) Plaintiffs argue that Defendant must admit evidence proving by a preponderance of evidence that the amount in controversy is satisfied when the amount is challenged. (Mot. 3.) Defendant is correct that *both* parties can submit proof when, as here, the plaintiff has challenged defendant's assertion of the amount in controversy. *See Ibarra*, 775 F.3d at 1198 (citing *Dart Cherokee*, 135 S.Ct. at 554-55) ("Yet, when the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies.")

However, Defendant wrongly asserts that the Plaintiff must submit proof and that Defendant presumptively meets the preponderance standard because of Plaintiff's failure to submit such proof. (Mot. 4; *see Mejia v. DHL Express (USA) Inc.*, CV No. 15-00890 GHK (JCx), 2015 WL 2452755 at *2 (C.D. Cal. May 21, 2015) ("While [p]laintiff *may* rebut [d]efendant's evidence with his own evidence, he need not do so in order to prevail in his [m]otion [to remand].") (emphasis in original).) In fact, whether a plaintiff is required to submit such evidence is currently an open question within the Ninth Circuit. *See Townsend v. Brinderson Corp.*, CV No. 14-05320 FMO (RZx) , 2015 WL 3970172 at * 3 (C.D. Cal. June 30, 2015) (finding that "neither *Dart Cherokee* nor *Ibarra* mandate that a plaintiff must always submit evidence challenging the amount in controversy"), *see also Ibarra*, 775 F.3d at 1199-1200 ("The Supreme Court did not decide the procedure for each side to submit proof on remand and here we need not decide the procedural issue, either."). Accordingly, the Court does not adopt Defendant's contention and does not find that Defendant has met its burden due to Plaintiff's failure to submit evidence.

        2.      <u>Defendant Has Not Met Its Burden of Establishing the Amount in Controversy</u>

The Court next determines whether the amount in controversy has been established by a preponderance of the evidence to exceed the jurisdictional limitation required under CAFA. Regardless of whether Plaintiff was required to submit its own evidence, it is the Defendant's

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 6 of 15 Page ID #:335

JS-6 UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CIVIL MINUTES - GENERAL

CASE NO.: ED CV 17-00074 SJO (SPx)        DATE: March 3, 2017

burden to prove by a preponderance of evidence that the amount in controversy has been met. *See Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("A defendant seeking removal of a putative class action must demonstrate, by a preponderance of the evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."); *see also Ibarra*, 775 F.3d at 1197 ("[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceed $5 million when federal jurisdiction is challenged.")

In order to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, Defendant must show it is "'more likely than not'" to exceed $ 5 million. *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 404 (9th Cir. 1996)).

>  a. <u>Defendant's Assumption of a 100% Violation Rate is Reasonable</u>

The Court begins with Defendant's assumption of a 100% violation rate. (Am. Removal ¶ 16.) Defendant assumes, for the purposes of its calculations, that there was a 100% violation rate. (Am. Removal ¶ 16.) However, Defendant does not state what this rate corresponds to. (*See generally* Am. Removal.) As such, the Court is left to speculate whether the 100% violation rate refers to the putative class (i.e., that 100% of the hourly-paid or non-exempt employees suffered the violations alleged by Plaintiffs), or whether the 100% violation rate refers to the frequency of the violations (i.e., one violation per shift). Because Defendant later states that, for purposes of calculation, violations regarding overtime compensation occurred five times per week, the Court interprets the 100% violation rate to refer to the inclusion within the putative class of all non-exempt or hourly-paid persons who are currently employed by Defendant or were formerly employed by Defendant during the relevant time. (*See* Am. Removal ¶ 18.) The Court now examines whether this assumption is reasonable.

The allegations in the complaint control the amount in controversy. *Ibarra*, 775 F.3d at 1197. Plaintiffs allege that Defendant "engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees within the State of California." (Compl. ¶ 29.) Based on Plaintiff's allegations that Defendant had a "uniform policy" and "systematic scheme," which occurred at "all material times," the Court finds it reasonable for Defendant to presume that all hourly-paid or non-exempt employees within the relevant time period suffered the violations alleged by Plaintiffs. *See Mejia*, 2015 WL 2452755 at *4 ("It is not unreasonable to assume that when a company has unlawful policies that are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied.")

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 7 of 15 Page ID #:336

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.: <u>ED CV 17-00074 SJO (SPx)</u>    DATE: <u>March 3, 2017</u>

      b.      <u>Defendant's Calculations of Unpaid Wages, Meal and Rest Periods, and Business Expense Reimbursements Are Not Reasonable</u>

Defendant alleges that, with respect to the claims for unpaid wages, meal and rest periods, and business expense reimbursement, it employed approximately 433 non-exempt employees from November 30, 2012 to present whose average pay was $11.38 and who, as a group, worked for a total of 15,337 weeks. (Am. Removal ¶ 17.) Plaintiff contends that these numbers are unsupported by evidence. (Mot. 4-5.) In response, Defendant relies on the declaration of Richard Teeter who oversees Defendant's payroll functions. (*See* Decl. Of Richard Teeter in Support of Def.'s Opp'n to Pls.' Mot. to Remand ("Teeter Decl."), ECF No. 18-1.) Teeter avers that the numbers used by Defendant concerning number of employees, workweeks, and average pay are based on his overview of "relevant records . . . including payroll records and timekeeping records." (Teeter Decl. ¶ 1.) The Court finds that the Teeter Declaration is sufficient support for these numbers. *See Ellis v. Pacific Bell Telephone Co.*, CV No. , 2011 WL 499390 at *2 (C.D. Cal. Feb. 10, 2011) ("[D]efendants may rely on calculations to satisfy their burden so long as their calculations are good faith, reasonable estimates based on the pleadings and other evidence in the record.")

           i.      <u>Unpaid Overtime Wages</u>

Based on the aforementioned allegations and assumptions, Defendant contends that the total amount in controversy for the unpaid overtime cause of action is approximately $1,309,010.00.[3] (Am. Removal ¶ 18.) Pursuant to CLC section 510, "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510.

The Court first determines whether the Defendant's use of the average hourly rate multiplied by the overtime rate is proper. Defendant alleges that the average hourly rate of the putative class is $11.38 and multiplies this by 1.5, which equals $17.07. (Am. Removal ¶ 18.) Defendant then multiplies $17.07 by the presumed violations per week and the number of workweeks to reach the alleged amount in controversy of $1,309,010.00. (Am. Removal ¶ 18.) However, Plaintiffs have not alleged that Defendant failed to pay them in total for any overtime worked. (*See* Compl.) Instead, Plaintiffs allege that Defendant failed to pay "overtime wages," and, as such, owes Plaintiffs the "unpaid balance of overtime compensation." (Compl. ¶¶ 57-58.) As such, the proper calculation of the amount in controversy should include the *difference* between the overtime wage

---

[3] Defendant's formula : $11.38 (avg. hourly rate) x 1.5 (overtime rate) x 5 (unpaid hours per week) x 15,337 (number of workweeks in the relevant time period) = $1,309,010.00.

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 8 of 15 Page ID #:337

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: ED CV 17-00074 SJO (SPx)          DATE: March 3, 2017

rate ($17.07) and the normal wage rate ($11.38), which equals $5.69. *See Roth*, 799 F. Supp. 2d at 1119 (finding that Defendants should have based their calculation of the amount in controversy regarding unpaid overtime claims on the difference between the overtime rate and the regular rate, not the overtime rate itself).

The Court next determines whether the assumption of five unpaid hours per week is reasonable. Defendant asserts that "assuming for purposes of this analysis only . . . each putative class member was not paid for five hours of overtime for each week of his or her employment . . . ." (Am. Removal ¶ 18.) Defendant offers no explanation as to the basis for this presumption. (*See generally* Teeter Decl.) To meet the preponderance standard, the Defendant must prove through reasonable assumptions, and not through speculation, that the amount in controversy is met. *Dobbs*, 2016 WL 4367218 at *2 (citing *Ibarra*, 775 F.3d at 1199) (" When a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable."). Although the Plaintiff alleges that Defendant failed to pay overtime wages "at all material times," the Court finds that Defendant's assumption of five hours is unreasonable. *See Jasso v. Money Mart Exp., Inc.*, CV No. 11-05500 YGR, 2012 WL 699465 at * 6 (N.D. Cal. Mar. 1, 2012) ("Where, as here, the allegations are that class members were not compensated for overtime . . . 'at all material times' based on a 'uniform policy and systematic scheme' to deprive them of these rights, it is reasonable to assume one violation per week [ ]."); s*ee also Long v. Destination Maternity Corporation*, CV. No. 15-02836 WQH (RBBx) , 2016 WL 1604968 at * 7 (S.D. Cal. April 21, 2016) (finding that an assumption of "one hour of unpaid overtime per putative class member per week" is a reasonable estimate "based on the allegations that Defendant engaged in a uniform policy of failing to pay overtime wages . . . ."). Accordingly, the Court finds that one hour of unpaid overtime per putative class member per week is a reasonable assumption for purposes of calculating the amount in controversy.

Based on these findings, the Court calculates the amount in controversy for unpaid overtime wages as $87,267.53.[4]

>           ii.     Unpaid Meal Period and Rest Period Premiums

The Court next turns to Defendant's calculation of unpaid meal period and rest period premiums. Pursuant to CLC section 512(a), "[a]n employer may not employ an employee for a work period of more than five hours per day without providing a meal period of not less than 30 minutes . . . ." Cal. Lab. Code § 512(a). Furthermore,  an employer must pay employees "one additional hour of

---

[4] The Court arrives at this result by using the following formula: [(11.38 x 1.5) - 11.38] (the difference between the overtime and hourly rate) x 1 (reasonable number of violations per week) x 15,337 (number of workweeks within the relevant time period).

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 9 of 15 Page ID #:338

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:** ED CV 17-00074 SJO (SPx)         **DATE:** March 3, 2017

pay at the employee's regular rate of compensation" for failure to provide a meal or rest break. Cal. Lab. Code § 226.7. The Industrial Welfare Commission defines rest period as "ten minutes net rest time per four hours" of work. Cal. Code Regs. title 8, § 11040(12)(a). Assuming 2.5 violations per week regarding meal periods and 2.5 violations per week regarding rest periods, Defendant contends that the amount in controversy regarding meal and rest period premiums is $436,338.00 per cause of action, for a total of $872,676.00.[5] (Am. Removal ¶¶ 19-20.)

The Court again accepts in good faith Defendant's average hourly rate, putative class members, and workweeks within the relevant time period. Thus, the Court turns to whether Defendant reasonably assumed that Plaintiffs suffered 2.5 violations of meal periods and 2.5 violations of rest periods per week. Plaintiffs allege that "during the relevant time period" and "at all material times," Defendant required Plaintiffs to work without the requisite rest periods and meal periods and failed to pay Plaintiffs the premiums due under CLC section 226.7. (Compl. ¶¶ 42, 65-68, 76-77.) First, Defendant improperly bases the calculation on the number of violations suffered and not the number of workdays on which a violation occurred. (*See* Am. Removal ¶ 19-20.) Under California law, an employee "may recover up to two additional hours of pay on a single work day for meal period and rest period violations: one if any meal period violations occur in a work day and one if any rest break violations occur in a work day." *United Parcel Service Inc. v. Superior Court*, 196 Cal. App. 4th 57, 64 ( 2011) (quotations and citations omitted). Therefore, the proper calculation of premiums due under the applicable statutes are the number of workdays on which a violation occurs, not the number of violations which occur. Second, Defendant offers no evidence supporting its average number of missed meal periods or rest periods. (*See generally* Teeter Decl.) Accordingly, the Court finds that Defendant's assumption of 2.5 violations per week is not reasonable and finds that an assumption of one workday on which a meal period was withheld and one workday on which rest periods were withheld per week is a reasonable assumption. *See Jasso*, 2012 WL 699465 at * 5.

Based on these findings, the Court calculates the amount in controversy for missed meal premiums to be $174,535.06 and the amount in controversy for missed rest premiums to be the same, for a total of $349,070.12.[6]

### iii. Unreimbursed Business Expenses

---

[5] Defendant's formula: 11.38 (avg. hourly rate) x 1 (hour of compensation as penalty for non-compliance) x 2.5 (violations per week) x 15,337 (workweeks within the relevant time period).

[6] The Court arrives at this result with the following formula: 11.38 (avg. hourly rate) x 1 (hour of compensation due for violation) x 1 (workday on which a violation occurred per week) x 15,337 (workweeks within the relevant time period).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: ED CV 17-00074 SJO (SPx)   DATE: March 3, 2017

Finally, the Court examines whether the Defendant's calculation of the amount in controversy regarding unreimbursed business expenses is reasonable. Pursuant to CLC section 2802, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ." Cal. Lab. Code § 2802. Defendant contends that the amount in controversy regarding unreimbursed business expenses is $383,425.00.[7] For purposes of calculating the amount owed in unreimbursed business expenses, Defendant assumes that each member of the putative class incurred a business-related expenses of $25 per week. (Am. Removal ¶ 25.) The Court finds no basis for this assumption in the record. Plaintiff merely contends that "[p]laintiffs and the other class members incurred necessary business-related expenses and costs that were not fully reimbursed by the Defendants." (Compl. ¶ 112.) Defendant offers no explanation or support for this assumption in either the Amended Removal or the Teeter Declaration. (*See both* Am. Removal *and* Teeter Decl.) Furthermore, while Plaintiff contends that Defendant failed to reimburse Plaintiffs and putative class members for necessary business expenses "at all material times," Plaintiff does not contend that Defendant had a "uniform policy and systematic scheme" with regards to payment of business expenses. (*See* Compl. ¶¶ 29, 48.) As such, a 100% violation rate is improper here. *See Dobbs*, 2016 WL 4367218 at * 3 (finding that the propriety of an assumed 100% violation rate depends, in part, on whether the plaintiff alleges a "uniform" policy or a "pattern and practice" of violations in the complaint). Accordingly, the Court finds that this assumption is unreasonable, and therefore, Defendant has failed to establish the amount of unreimbursed business expenses by a preponderance of the evidence.

      c.    <u>Unpaid Minimum Wages</u>

The Court now turns to Defendant's calculation of the amount of unpaid minimum wages. Pursuant to CLC sections 1194 and 1197, an employee is entitled to the unpaid balance of the full amount of minimum wage compensation for any hours worked where employee received less than the legal minimum wage. Cal. Lab. Code §§ 1194, 1197.

For purposes of this calculation, Defendant contends there were 5,849 total workweeks for employees from November 30, 2012 until June 30, 2014, during which the minimum wage in California was $ 8.00 per hour. (Am. Removal ¶ 17.) During the time period in which the minimum wage was $9.00 per hour (July 1, 2014 until December 31, 2015), Defendant contends there were 5, 564 workweeks for all employees. (Am. Removal ¶ 17.) Finally, during the time period in which the minimum wage was $10.00 per hour (January 1, 2016 until the date of Removal), Defendant

---

[7] Defendant's formula: 25 (business expenses incurred per week) x 15,337 (workweeks within the relevant period).

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 11 of 15 Page ID #:340

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: ED CV 17-00074 SJO (SPx)          DATE: March 3, 2017

contends there were 3,924 total workweeks for all employees employed during the period. (Am. Removal ¶ 17.) The Court again accepts these assumptions in good faith based on Defendant's declaration in support of these contentions. (Teeter Decl. ¶¶ 6-8.) Because Plaintiff alleges that Defendant, as part of a "uniform policy and systematic scheme" and "at all material times," failed to pay employees "for all hours worked," Defendant's use of a 100% violation rate is reasonable for purposes of this calculation. (Compl. ¶¶ 29, 44.) Based on these assumptions, Defendant contends the amount in controversy regarding unpaid minimum wages is $680,540.00.[8] (Am. Removal ¶ 21.)

Although Plaintiff alleges a uniform policy which was in effect at "all material times," the Court finds that Defendant's assumption of five hours of work at a rate below minimum wage is unreasonable. (Compl. ¶ 45; *see Jasso*, 2012 WL 699465 at * 5.) In the Complaint, Plaintiffs do not specify whether Defendant failed to pay employees any sum for certain hours worked or whether Defendant paid employees below minimum wage for some hours worked. (Compl. ¶¶ 82-83.) Instead, Plaintiffs allege Defendant "failed to pay minimum wage to Plaintiffs" and that "Plaintiffs and the other class members are entitled to recover the unpaid balance of their minimum wage compensation." (Compl. ¶¶ 82-83.) The Complaint further asserts that Defendant failed to pay Plaintiff "at least minimum wages for all hours worked." (Compl. ¶ 45.) Accordingly, Plaintiffs are due the difference between minimum wage and the wage actually paid, which could be either the entire value of the minimum wage (if the employee were not paid at all for the hour worked) or for some smaller value (if the employee was paid but at a rate below minimum wage). *See Roth*, 799 F. Supp. 2d at 1119. Neither Plaintiffs nor Defendant offer any clarification on whether the work was unpaid or simply paid at a rate below the minimum wage. (*See generally* Compl., Am. Removal.) Furthermore, unlike the overtime wage claim above, neither party offers an average wage below the minimum wage on which the Court could compute the difference. Finally, the average wage offered by the Defendant is above the minimum wage in all instances. (Am. Removal ¶ 17.) Accordingly, the Court calculates the amount in controversy for failure to pay minimum wage as if Plaintiffs worked one hour per week without any compensation, noting that this nears the upper limit of this claim and that Plaintiffs could be due a lesser amount if paid for the work at a rate below minimum wage. As such, the Court calculates the amount of unpaid minimum wages to be $130,108.00.[9]

---

[8] Defendant's formula: [8 (minimum wage) x 5 (hours of unpaid minimum wages per week) x 5,849 (workweeks between November 30, 2012 until June 30, 2014)] + [9 (minimum wage) x 5 (hours of unpaid minimum wages per week) x 5,564 (workweeks between July 1, 2014 until December 31, 2015] + [10 (minimum wage) x 5 (hours of unpaid minimum wages per week) x 3,924 (workweeks from January 1, 2016 until the time of removal)].

[9] The Court uses the following formula: [8 (minimum wage) x 1 (hour of unpaid minimum wages per week) x 5,849 (workweeks between Nov. 30, 2012 until June 30, 2014)] + [9

JS-6

| | |
|---|---|
| | Priority ____ |
| | Send ____ |
| | Enter ____ |
| | Closed ____ |
| | JS-5/JS-6 ____ |
| | Scan Only ____ |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>ED CV 17-00074 SJO (SPx)</u>                DATE: <u>March 3, 2017</u>

Pursuant to CLC section 1197.1, employers who pay an employee less than the minimum wage are subject to liquidated damages and penalties. Cal. Lab. Code § 1197.1(a). Liquidated damages for this cause of action are "an amount equal to the wages unlawfully unpaid an interest thereon." Cal. Lab. Code § 1194.2. Accordingly, Defendant contends that liquidated damages under this cause of action equal $680,450.00. (Am. Removal ¶ 22.) However, based on the findings above, the Court computes liquidated damages for this claim to be $130,108.00. Employees are also due $100 for any initial, intentionally committed violation and $250 for each subsequent violation, regardless of intent. Cal. Lab. Code §§ 1197.1 (a)(1)-(2). Defendant does not assess penalties due under this cause of action. (*See generally* Am. Removal.) Because the Court has already found that a 100% violation rate is appropriate under the allegations in the Complaint, the Court finds it reasonable to presume that the 433 putative class members are each due at least $100 for an initial violation. Accordingly, the Court finds an additional $43,300.00 should be included within the amount in controversy.

            d.      <u>Final Wages Not Timely Paid</u>

Next, the Court analyzes Defendant's calculation of the amount of final wages not timely paid. Pursuant to CLC sections 201 and 202, "wages earned an unpaid at the time of discharge are due and payable immediately" and wages earned by an employee who resigns are due within 72 hours of resignation unless the employee gave at least 72 hours notice of intent to resign, in which case wages earned and unpaid are due at the time of resignation. Cal. Lab. Code §§ 201-202. An employer who fails to pay such wages at the appropriate time is subject to a penalty wherein the employee's wages continue to accrue from the due date until paid or an action is commenced, but shall not continue for more than 30 days. Cal. Lab. Code § 203.

With respect to Plaintiffs' claims for "waiting time penalties," Defendant alleges there were 296 putative class members whose average final pay was $11.20. (Am. Removal ¶ 17; Teeter Decl. ¶ 4.) Based on these assumptions, the Defendant contends the amount in controversy is $795,648.00.[10] Plaintiff contends that Defendant has offered no support for its assumption that penalties accrued for the maximum time period allowed under the statute. The Court disagrees with Plaintiff's contention. Here, Plaintiff alleges that Defendant willfully failed to pay all final

---

(minimum wage) x 1 (hours of unpaid minimum wages per week) x 5,564 (workweeks between July 1, 2014 until December 31, 2015] + [10 (minimum wage) x 1 (hours of unpaid minimum wages per week) x 3,924 (workweeks from January 1, 2016 until the time of removal)].

[10] Defendant's formula: 11.20 (avg. final pay) x 8 (hours in a workday) x 30 days (maximum amount of time during which penalties may accrue) x 296 (putative class members).

| MINUTES FORM 11 | | ____ : ____ |
|---|---|---|
| CIVIL GEN | Page 12 of 15 | Initials of Preparer _____ |

| | UNITED STATES DISTRICT COURT | |
|---|---|---|
| JS-6 | CENTRAL DISTRICT OF CALIFORNIA | Priority ___<br>Send ___<br>Enter ___<br>Closed ___<br>JS-5/JS-6 ___<br>Scan Only ___ |
| | CIVIL MINUTES - GENERAL | |

CASE NO.:  ED CV 17-00074 SJO (SPx)           DATE: March 3, 2017

wages due to employees at all material times. (Compl. ¶¶ 45, 88.) Plaintiff further alleges that "Defendant failed to pay Plaintiffs and the other class members all wages within any time permissible under California law," and that "Defendants failed to properly compensate Plaintiffs and the other class members pursuant to California law in order to increase Defendant's profits." (Compl. ¶¶ 45, 49.) Based on Plaintiff's allegations, the Court finds it reasonable for Defendant to assume that putative class members did not receive final wages for the full 30 day period under which penalties may accrue. *See Long,* 2016 WL 1604968 at * 9 (finding that Defendant's assumption that final wages went unpaid for the full thirty days is reasonable where plaintiff alleges that defendant failed to pay final wages and still had not paid plaintiff all wages). Accordingly, the Court finds that Defendant's estimate of $795,648.00 is reasonable.

e.     Non-Compliant Wage Statements

The Court next considers Defendant's calculation of the amount in controversy with respect to Plaintiff's claim for non-compliant wage statements. Pursuant to CLC section 226(e)(1), an employee who is not receiving wage statements compliant with section 226(a) is entitled to recover the greater of all actual damages or an aggregate penalty consisting of $50 for the pay period in which a violation occurs and $100 for each violation in a subsequent pay period, not to exceed $4,000.00. Cal. Lab. Code § 226(e)(1). With respect to Plaintiffs' claim for non-compliant wage statements, Defendant alleges that there were 105 putative class members working during the relevant time period. (Am. Removal ¶ 17; Teeter Decl. ¶ 5.) Defendant, assuming a maximum aggregate penalty, computes the amount in controversy to be $420,000.00.[11]

Plaintiff contends that Defendant's assumption of maximum aggregate penalties is unreasonable. (Mot. 12-13.)  Plaintiff alleges that Defendant failed to provide "complete and accurate wage statements" by failing to "include the total number of hours worked." (Compl. ¶ 100.) Plaintiffs further allege that they are entitled to either "the greater of actual damages caused by Defendants' failure to comply with CLC section 226 (a) or an aggregate penalty not exceeding four thousand dollars per year" and to "injunctive relief to ensure compliance with this section." (Compl. ¶¶ 103-04.) Based on the allegations in the Complaint, the Court finds Defendant's use of the maximum aggregate penalty allowed to be reasonable. First, the request for injunctive relief implies that the harm is still ongoing today. *See Hells Canyon Preservation Council v. Jacoby*, 9 F. Supp. 2d 1216, 1245 (D. Ore. 1998) ("'Irreparable harm is injury that is not remote or speculative but actual and imminent . . . .'"). This supports Defendant's use of the maximum aggregate penalty because it increases the likelihood that the conduct has been consistently occurring from the time period during which Plaintiffs worked for Defendant until the Amended Removal was filed, making the

---

[11]  Defendant's formula: 105 (putative class members) x 4,000 (maximum aggregate penalty).

| MINUTES FORM 11 | | ___ : ___ |
|---|---|---|
| CIVIL GEN | Page 13 of  15 | Initials of Preparer _____ |

Case 5:17-cv-00074-SJO-SP Document 26 Filed 03/03/17 Page 14 of 15 Page ID #:343

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: ED CV 17-00074 SJO (SPx)                    DATE: March 3, 2017

maximum aggregate penalty a reasonable assumption. Furthermore, "courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy is met." *Korn*, 536 F. Supp. 2d at 1205. Finally, the language of the statute states that the appropriate award is the *greater of* actual damages or the maximum aggregate penalty, meaning that the maximum aggregate penalty is a potential floor on the amount in controversy for this claim. (*See* Cal. Lab. Code § 226(e)(1) (emphasis added).) Accordingly, the Court finds the Defendant's assumption reasonable. Thus, the Court finds that the amount in controversy regarding non-compliant wage statements is $420,000.00.

Defendant alleges the amount in controversy to total $5, 141,839.00. (Am. Removal ¶ 26.) However, based on the above findings, the Court calculates the amount in controversy for all claims to be $1,955,501.65.[12] Assuming, *arguendo*, that Defendant's assumptions regarding business expenses are reasonable, the amount in controversy would total $2,293,926.65, still well below the jurisdictional limit set by CAFA.

f.      Attorney's Fees

Finally, the Court considers attorney's fees, which the Defendant did not include in its amount in controversy calculation but did discuss in its Amended Removal. (Am. Removal ¶¶ 29-32.) Attorney's fees should be part of the amount in controversy calculation. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150 (9th Cir. 1998.) When computing attorney's fees, some courts have only considered fees incurred as of the date of removal, while others consider a reasonable estimate of future attorneys' fees. *See Long*, 2016 WL 1604968 at *10. While neither party has offered evidence of attorney's fees incurred to date, Defendant does offer as a reasonable estimate of future fees a case where Plaintiffs' firm incurred fees of $666,666.66. (Am. Removal ¶ 31.) Assuming, *arguendo*, that these fees are a reasonable estimate of future fees, the amount in controversy would still not exceed the jurisdictional minimum of $5 million. Accordingly, while it is true that the Court may consider attorney's fees for the purpose of calculating the amount in controversy, the Court finds such consideration unnecessary here.

III.    RULING

---

[12] The Court arrives at this result by using the following formula: $87,267.53 + 349,070.12 + 130,108.00 +130,108.00 + 43,300.00 + 795,648.00 + 420,000.00. Defendant does not address the relief sought by Plaintiffs regarding the claims for wages not timely paid during employment, failure to keep requisite payroll records, and equitable relief, and, accordingly, the Court does not consider them either.

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:  ED CV 17-00074 SJO (SPx)          DATE: March 3, 2017

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion and **REMANDS** this action to the Superior Court of California, San Bernardino County. This action shall close.

IT IS SO ORDERED.